KING (SMALL v.). See Case No. 12,960.

---

## Case No. 7,806.

### KING et al. v. SMITH.

[4 Chi. Leg. News, 281; 7 Am. Law Rev. 178.]1

Circuit Court, D. New Jersey. March 27, 1872.

CONSTRUCTION OF REVENUE LAWS—WHAT CONSTITUTES A MANUFACTURED ARTICLE — THE TERM "MANUFACTURED" DEFINED, AND THE DEFINITION APPLIED TO CORKS AND CORK WOOD.

[Manufactured cork means such fabric produced from the raw material or the rough cork as is adapted to use and suitable for sale in the market as such, and unmanufactured cork is cork in such a condition as not to be adapted to such use and sale. Cork squares or quarters fall within the latter class.]

These were two suits brought against the defendant [C. McKnight Smith], the collector of customs at Perth Amboy, N. J., to recover duties paid under protest by the plaintiffs [William King and others], upon importations by them from Seville, Spain, of articles known as "cork squares" or "cork quarters." Under the tariff of 1864 [13 Stat. 202], "cork wood or cork bark, unmanufactured," was dutiable at thirty per cent. ad valorem, while "cork wood or cork bark, manufactured," was dutiable at fifty per cent. ad valorem. While that tariff was in force, importations such as those in question were charged by the collector at Perth Amboy and New York with duties at the rate of only thirty per cent. By the tariff act of 1870 [16 Stat. 256], "cork wood or cork bark unmanufactured," was put on the free list, and thereupon the collector at Perth Amboy and New York, by direction of the treasury department, exacted duties on such im-

1 [7 Am. Law Rev. 178, contains only a partial report.]

portations as those in question at the rate of fifty per cent. ad valorem, claiming that the act of 1864 applied to them as manufactured goods. The plaintiffs claimed the right to enter them free of duty as unmanufactured.

The following facts appeared by the testimony: The cork tree is a species of oak, growing in forests in Spain, Portugal and the south of France. There is an inner bark, through which exudes a gummy substance, which, in the course of every seven years, forms a second bark, completely covering the inner one. This second bark is the cork wood of commerce. Outside of it there forms a thin but hard and fibrous covering, which is useless. The cork crop is harvested by stripping the trees, at the maturity of the second bark, of that bark, leaving the inner bark untouched. The outside of the cork, as it comes off, is covered with the fibrous coating, called the "back." The inner surface is rough and discolored, and is called the "belly." The cork comes off in long strips, curved from side to side, with irregular ends and edges, formed by the strokes of the axe, and by fracture of the material as it is pried off. In this condition it is not fit for use nor for sale, and is not exported. It is first boiled or steamed to soften it, then flattened under pressure and the back partially scraped off, and the edges trimmed off with knives. The slabs, thus flattened, trimmed and scraped, are then packed in bales and bundles, and exported in that shape as raw material. When again steamed and softened, and the remains of the back scraped off, these slabs may be cut up and made into floats, soles, life-preservers, inkstands, artificial limbs, and the like. The trimmings from the edges may be made into cork stoppers, and as a step in the process may be cut into smaller blocks, called "squares" or "quarters." Cork stoppers are made either from these cork squares or quarters, by hand or machinery. Cork stoppers are also made by cutting the flat slabs into long strips of suitable size, from which the finished corks may be cut by a blow from a perpendicular punch, or by a machine like a turning lathe; or the strips may again be reduced to squares or quarters, which latter are made into stoppers by hand or (in this country) by machinery. The importations in question consisted of these squares and quarters, of unequaled sizes and not uniform finish. Some were smooth on all sides. Some had on the backs or bellies, or both. Some were broken at the edges and not equilateral. Some would require steaming before being turned into cork. Considerable refuse would result from turning them into cork. They were not imported for sale, but only for further manufacture. The plaintiffs relied on the practical construction put on the tariff of 1864 by the government, and on the cases of U. S. v. Potts, 5 Cranch [9 U. S.] 284, Lawrence v. Allen, 7 How. [48 U. S.] 785, and U. S. v. Wilson [Case No. 16,736], and on various decisions of Secretaries Chase and Cobb, concerning veneers, watch springs, regulus of copper, etc.

F. N. Bangs, for plaintiffs.
A. G. Keasby, U. S. Dist. Atty., for collector.

McKENNAN, Circuit Judge (charging jury). This suit was brought to recover duties paid for the importation of cork by the plaintiff, that were exacted by the defendant from the plaintiff, in 1871. It appears that the plaintiff was engaged in the manufacture of cork, at Perth Amboy, in this state; that he imported an invoice of cork, composed of complete corks and blocks and sheets such as you see here; that the collector charged upon these blocks a duty of fifty per cent. under the act of 1864, as manufactured cork, and that the plaintiff declined to pay that duty. The collector refused to deliver the invoice to the plaintiff until the duty was paid; that the plaintiff accordingly paid the duty under protest and now seeks to recover it back upon the ground that this duty was wrongfully exacted from him. As you have already heard, by the act of 1864, a duty of fifty per cent. was imposed upon cork or cork wood, manufactured: and a duty of thirty per cent. upon cork or cork wood, unmanufactured. The question then is in which class does the article—these cork quarters—fall.

The question is a very narrow one, as I have already intimated; and we instruct you, that what is meant by the act of 1864, is this: that manufactured cork means such fabric produced from the raw material or the rough cork, as is adapted to use and suitable for sale in the market as such; and that unmanufactured cork is cork in such a condition as to be not adapted to such use and sale. That is the simple definition. Now, what are these blocks? are they manufactured cork, in the sense of that term, as it has been defined to you, or not? It is not that they have been advanced one stage or two stages in the process of preparation for manufacture, but, whether they have been reduced to the form of fabrics of cork adapted to use and suitable for sale. If they are not so, the plaintiff is entitled to your verdict: if they are, the verdict must be for the defendant. But I apprehend, and it is not improper for me to say so, that you have very little difficulty about this. There is scarcely any dispute between the counsel, that in the present form they are not brought to the condition of a marketable commodity. They are not manufactured so as to be put upon the market and sold for immediate use; and not being so, they are therefore to be classified as cork or cork wood, unmanufactured. If you so find, the plaintiff is entitled to recover the duties paid, with interest from the time of their payment under protest by the plaintiff, in 1871, in gold; and you will render your separate verdicts accordingly, in each case,—there being two cases here.

Perhaps the better way to put the case in shape, that it may be revised by the supreme court, is to answer the several points presented by the plaintiff's counsel.

The first point is, "that the burden of proof is on the defendant, to show that the imported articles in question were chargeable with a duty of fifty per cent. under the tariff act of 1864." We instruct you accordingly.

The second is, "that to constitute the articles in question 'cork wood or bark, manufactured' within the meaning of the tariff act of 1864, they must have been, as a matter of fact, capable of being used, and must have been designed to be used, in ordinary life, without further manufacture." We have already instructed you accordingly.

3. "That if the jury find that the articles in question were not capable of being used, nor designed to be used, in ordinary life without further manufacture, then the plaintiffs are entitled to a verdict." That also is the law.

4. "That the evidence shows that the articles in question were not capable of being used and were not designed to be used in ordinary life, without further manufacture; and that therefore they were not within the legal definition of the term manufactured, as used in the tariff act of 1864." We decline to give you this instruction because it asks us to affirm what it is your business to find. You are to determine whether the evidence does show that the articles in question fall within the definition of the terms of the law as already given to you.

5. "That if, while the tariff act of 1864 was in force, the words 'cork wood or bark, unmanufactured' as used in that act, were, by the mutual understanding of the government and of those engaged in importing cork squares or quarters like those in question, construed as applying to such squares or quarters, then the legal presumption is that by the use of the words 'cork wood or cork bark, unmanufactured' in the tariff act of 1870, congress intended to designate the same article which, under the tariff act of 1864, had been subjected to a duty of only thirty per cent." That point is affirmed.

6. "That if, while the tariff act of 1864 was in force, the words 'cork bark or wood, unmanufactured' acquired a conventional meaning as an understood designation (either in trade or in collection of the revenue) of squares or quarters like those in question, then the words 'cork wood or cork bark, unmanufactured,' as used in the act of 1870, must be construed as applying to and designating such squares or quarters." That point is also affirmed.

7. "That by the true construction of the act of 1870, the articles in question are entitled to entry free of duty, and the exaction of any duty thereon was illegal." That is a fact which it is your province to determine, and we therefore decline to give you instructions.

8. "That upon the whole evidence, the plaintiffs are entitled to verdicts for the whole amount of duties exacted, with interest thereon, to be paid, levied or collected in gold coin of the United States." That we decline, for the same reason. It is your province to determine whether the articles admitted in evidence before you, fall within the definition of the meaning of the act of congress, as given to you.

The jury rendered a verdict for the plaintiff for $3,500 in gold.