UNITED STATES *v.* STRAUSS & Co. (No. 817).[1]

SCRAP IRON OR STEEL, WHEN NOT JUNK.
    The importation was of irregularly broken pieces of old sugar mills, originally iron and steel shafting. The testimony shows that the greater part of the goods could be remanufactured only by melting and so they came within the very terms of paragraph 118, tariff act of 1909. In the absence of any showing as to the precise quantity of the consignment that is not so classifiable, the whole consignment will be held subject to the provisions of that paragraph.

United States Court of Customs Appeals, April 17, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7305 (T. D. 32069).
    [Modified.]
*William L. Wemple,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, of counsel), for the United States.
*Hatch & Clute (Edward S. Hatch, Walter F. Welch,* and *Horace G. Prall* of counsel) for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:
The merchandise involved in this case was imported under the present tariff act, and was invoiced as "a lot of old bull shafts." It consisted of a quantity of old iron and steel shafting, broken into irregular pieces, which varied in length from 24 inches to 14 or 15 feet. They were recovered from dismantled sugar mills in Cuba, and were there broken into small pieces if facilities were present for such work, or were left in larger pieces if there were no facilities at hand for their reduction.

---

[1] Reported in T. D. 32464 (22 Treas. Dec., 741).

The appraiser reported that the merchandise was "second-hand iron shaftings, varying in size and fitted to be rerolled or hammered, and better than scrap iron fit only for manufacture by melting." Return for duty was made as manufactures of metal not specially provided for, at 45 per cent ad valorem, under the provisions of paragraph 199. Duty was assessed by the collector in accordance with this return.

The importers duly filed their protest, claiming that the merchandise was free as junk under paragraph 600; or dutiable as scrap iron or steel, at $1 per ton, under paragraph 118; or dutiable as waste not specially provided for, at 10 per cent ad valorem, under paragraph 479. Several other alternative claims were incorporated in the protest.

The Board of General Appraisers heard the protest upon evidence, and sustained the importers' claim for a classification of the merchandise as junk, under paragraph 600, and therefore entitled to free entry. The Government now appeals from that decision.

The following is a copy of the pertinent parts of the paragraphs above referred to:

118. * * * Wrought and cast scrap iron, and scrap steel, one dollar per ton; but nothing shall be deemed scrap iron or scrap steel except waste or refuse iron or steel fit only to be remanufactured by melting, and excluding pig iron in all forms.

479. Waste, not specially provided for in this section, ten per centum ad valorem.

600. Junk, old (free).

It is now conceded that the importation should not be assessed as a manufacture of metal not specially provided for, because the article is aptly enumerated with competing degrees of particularity in the several paragraphs cited by the protest; and the real present issue in the case is whether the merchandise in question is scrap iron or scrap steel under paragraph 118, or waste under paragraph 479, or junk under paragraph 600.

It will be observed that paragraph 118 expressly limits and defines the meaning in which the terms scrap iron and scrap steel are used therein. According to that definition those terms include only "waste or refuse iron or steel fit only to be remanufactured by melting."

The appraiser reported that the importation was fit to be remanufactured by rerolling or hammering without melting, and was therefore better material than that covered by the foregoing definition. This finding of the appraiser determined the action of the collector and also became in part the basis of the board's decision. However, the testimony contained in the record does not sustain the finding of the appraiser in that behalf; but, to the contrary, it effectually establishes the reverse of that finding. There were but two witnesses who testified at the hearing before the board. They were the importer himself and a manufacturer who purchased the merchandise from the importer and who was called as a witness in his behalf.

The importer testified that he would call the merchandise scrap, because the broken shafting was in larger pieces than ordinary in this country; that very small pieces are called junk and the larger

pieces are called scrap, but the terms are really synonymous; that the material was used for remanufacture by forging and melting, the cast iron being melted, the other being rolled; that over half of the importation was cast iron and was remanufactured by melting, such being the only method of using it; that he was unable to specify just how much of the importation belonged to that class.

The second witness, being the manufacturer who purchased the importation, testified that the consignment consisted of about 50 tons of broken shafting; that the material was scrap, but might also be called junk; the witness bought it, however, as scrap iron or steel; part of the material was forged without melting, but quite a portion of it was good only for melting, and such portion was broken by dynamite into small pieces for steel melting; the witness did not state the relative amount of the material which required to be melted before it could be remanufactured.

The foregoing is the substance of all the testimony which was submitted upon the question whether or not the material in question was fit only to be remanufactured by melting. It plainly established the fact that the greater part of the importation was scrap iron which could be remanufactured only by melting, and therefore came precisely within the definition contained in paragraph 118. The testimony failed to show just what proportion of the consignment belonged to that class, and just what proportion might be remanufactured without melting.

Upon this testimony, and failure of testimony, the court reaches the conclusion that the merchandise should be assessed as scrap iron and steel, dutiable at $1 per ton, under paragraph 118. It is clear that the greater part of the importation came precisely within the terms of that paragraph. It appears also that an unascertained and now unascertainable fraction of the merchandise did not properly fall within the terms of paragraph 118, because such part was capable of remanufacture without melting. The importers claim that this part of the importation was entitled to free entry as junk.

The testimony contained in the record does not require the court to pass upon this question of classification thus presented by the importers. Before that question could properly be raised in this case the testimony should show just what proportion of the importation came within the latter description, and the burden of proving this fact rested upon the importers. The total failure of proof upon this subject leaves the entire importation subject to the duty prescribed by paragraph 118, even though a part of it might possibly have been exempt upon fuller proof.

The judgment of the court, therefore, is that the assessment of the collector should be reversed, and the importation assessed under paragraph 118 as scrap iron and steel at $1 per ton. The decision of the board reversing the collector's assessment and holding the importation to be free as junk is therefore *modified* to that extent.