UNITED STATES *v.* JOHNS-MANVILLE Co. (No. 1376).   UNITED STATES
*v.* ARMSTRONG CORK Co. (No. 1377).[1]

CLIPPINGS OR SHAVINGS OF CORK BARK.

It is immaterial whether the clippings or shavings of cork bark here be deemed waste or not.   A review of the legislation affecting the subject matter, of the practice at the customs, and of pertinent judicial decisions makes it clear these cork clippings and shavings were meant to be, and were, included within the provisions of paragraph 547, tariff act of 1909, and so were entitled to free entry.

United States Court of Customs Appeals, November 18, 1914.

APPEAL from Board of United States General Appraisers, G. A. 7541 (T. D. 34276).

[Affirmed.]

*Bert Hanson,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel), for the United States.

*Allan R. Brown* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

These appeals concern importations at the port of New York of a variety of merchandise, which has been appropriately divided into three general classes:

1. Large pieces or sheets of the bark of the cork tree of inferior quality, either the first, or what is known as "virgin" bark, or later growths which are inferior in grain, and all of which are used to be ground into materials for cork carpets or linoleums and the manufacture of cork articles.

2. Small pieces or chunks of cork bark which have either been broken in handling through accident or have resulted from the trimming of sheets of the same.

3. Various small pieces, clippings or shavings of cork bark or cork sheets and squares, fragments, from which corks or cork disks or other manufactured cork articles have been cut, all constituting the residuum arising from the manufacture of various cork articles.

The several classes were indiscriminately mixed in the same bales as imported, and while there has been no serious contention upon the part of the Government that classes 1 and 2 are dutiable, the entire importation was rated for duty as mixed goods, part dutiable and part nondutiable according to the established rule.   United States *v.* Ranlett & Stone (172 U. S., 133–147); United States *v.* Waterhouse (1 Ct. Cust. Appls., 353–359; T. D. 31452); United States *v.* Strauss & Co. (3 Ct. Cust. Appls., 180–182; T. D. 32464, 3 Ct. Cust. Appls., 325–327; T. D. 32621).

Under that well-settled rule the entire importation was assessed as waste not specially provided for under the provisions of paragraph 479 of the tariff act of 1909.   The importers protested, claiming

---

[1] Reported in T. D. 34939 (27 Treas. Dec., 523).

the entire importation entitled to free entry under the provisions of paragraph 5,47 of the act as "cork wood, or cork bark, unmanfactured."

Counsel for the Government has devoted able argument to the point that the merchandise described as class 3 is cork waste resulting from the manufacture of cork blocks or squares and various cork articles, and as such dutiable. In our view of the case the competing provisions of the tariff law render the question of whether or not the merchandise is waste unimportant and unnecessary of decision. It may be assumed, in our view, that the merchandise is cork waste. The controlling question in the case is, Are the provisions of paragraph 547 of the free list sufficiently broad to include this merchandise? If so, obviously, whether or not cork waste, it is more specifically provided for therein than as waste under paragraph 479 and entitled to free entry.

The determinative issue in the case, therefore, is, Is the merchandise described in our classification 3 within the scope and intent of paragraph 547 of the free list? Concededly if that merchandise is so included, those classes described in 1 and 2 are likewise included. It will be helpful to have before us and bear in mind the exact method of the growth and production of the importations and their uses. A concise exposition of these facts is set forth in King *et al. v.* Smith (14 Fed. Cas., 551–552, Case 7806), as follows:

The following facts appeared by the testimony: The cork tree is a species of oak, growing in forests in Spain, Portugal, and the south of France. There is an inner bark through which exudes a gummy substance, which, in the course of every seven years, forms a second bark, completely covering the inner one. This second bark is the corkwood of commerce. Outside of it there forms a thin, but hard and fibrous, covering, which is useless. The cork crop is harvested by stripping the trees, at the maturity of the second bark, of that bark, leaving the inner bark untouched. The outside of the cork, as it comes off, is covered with the fibrous covering called the "back." The inner surface is rough and discolored and is called the "belly." The cork comes off in long strips, curved from side to side, with irregular ends and edges, formed by the strokes of the ax and by fracture of the material as it is pried off. In this condition it is not fit for use nor for sale and is not exported. It is first boiled or steamed to soften it, then flattened under pressure, and the back partially scraped off and the edges trimmed off with knives. The slabs thus flattened, trimmed, and scraped are then packed in bales and bundles and exported in that shape as raw material. When again steamed and softened and the remains of the back scraped off these slabs may be cut up and made into floats, soles, life preservers, inkstands, artificial limbs, and the like. The trimmings from the edges may be made into cork stoppers and, as a step in the process, may be cut into smaller blocks, called "squares" or "quarters." Cork stoppers are made either from these cork squares or quarters by hand or machinery. Cork stoppers are also made by cutting the flat slabs into long strips of suitable size, from which the finished corks may be cut by a blow from a perpendicular punch or by a machine like a turning lathe; or the strips may again be reduced to squares or quarters, which latter are made into stoppers by hand or (in this country) by machinery.

In this ascertainment it will also be of value to have before us and contrast the entire congressional language upon the subject matter as elucidative of the differentiations of this merchandise and parts thereof in the mind of Congress at enactment. This legislation is particularly instructive because it discloses a complete scheme of duties and grants of free entry as to this subject matter with precisely drawn lines of differentiation. The paragraphs contrasted are:

429. Cork bark cut into squares, cubes, or quarters, eight cents per pound; manufactured corks over three-fourths of an inch in diameter, measured at larger end, fifteen cents per pound; three-fourths of an inch and less in diameter, measured at larger end, twenty-five cents per pound; cork, artificial, or cork substitutes, manufactured from cork waste or granulated cork, and not otherwise provided for in this section, six cents per pound; manufactures, wholly or in chief value of cork, or of cork bark, or of artificial cork or cork substitutes, granulated or ground cork, not specially provided for in this section, thirty per centum ad valorem.

547. Cork wood, or cork bark, unmanufactured.

Thus while literally the lexicographic authorities agree that "cork" and "cork bark" are used interchangeably, which agreement is further confirmed by the understanding of trade and commerce, as shown by this record, this legislative scheme plainly shows that Congress had them in mind and specifically mentioned them as different tariff entities.

Upon reading the two paragraphs together the congressional purpose is unmistakable. There is an elaborate and detailed effort to precisely name all classes of this merchandise rated for duty and to prescribe the appropriate rate thereupon according to that description and its exact condition of manufacture or advancement in manufacture. There is an equally evident purpose to give free entry for the materials for these manufactures. Thus Congress had in mind and made dutiable with great exactness and marked differentiation, in accordance with the constructive processes applied thereto, "cork bark" in squares, cubes, or quarters, "manufactured corks" according to size, "artificial cork" and "cork substitutes," "cork waste," and "granulated cork," "manufactures" in chief value of "cork" or "cork bark," and "granulated or ground cork." Plainly, in this nomenclature Congress treated "cork" as something different but made from cork bark. It uses the word solely with reference and applicable to things constructed from cork bark. It uses the words "cork bark" as expressive of a material out of which cork squares, cork, granulated cork, and other cork articles are made. The paragraph shows Congress had "cork waste" in mind, for it is specifically mentioned. It is mentioned as a material out of which cork articles are made. Yet having it in mind, having mentioned it as a material, Congress did not in this carefully and elaborately drawn scheme making expressly dutiable all cork articles make cork

waste expressly dutiable. Neither is there any general language in the dutiable paragraph which by any construction embraces it. The natural inference, therefore, is, Congress having cork waste expressly in mind, not having made it dutiable in this exhaustive scheme of legislation and having expressly named it therein as a material only, had it in mind as a raw material and intended to relegate it to the raw material or free-list provision as "cork wood, or cork bark, unmanufactured."

That being the apparent intent of Congress, is the language employed sufficient for that purpose? We think it is. The legislative concept assigns to this paragraph that scope which will include all cork materials out of which the advanced cork manufactures and articles mentioned in paragraph 429 are made. The construction, therefore, which effectuates that purpose without violence to its language should be adopted. The words "cork wood" and "cork bark" are not necessarily interchangeable. Both being used in the paragraph the legal inference is that they are not. Cork wood refers more to the substance, while cork bark naturally refers to a form of that substance at one stage of its existence. Thus the bark as it comes from the tree would be cork bark in that form, but it is composed of a woody substance or composition known as cork wood. When the bark is made into a bottle cork it ceases, of course, to be cork bark, but remains cork wood in the tariff sense as descriptive of the substance or wood out of which the cork is made. This view of the natural significance of the terms not only gives a distinct meaning to all the words of the statute but also makes the term "cork wood" descriptive and inclusive of cork waste because all cork waste is of the woody substance known as cork wood. This generic scope given the meaning of "cork wood" explains why it is not used in paragraph 429 coextensively and interchangeably with cork bark. It naturally includes all the articles more specifically provided for in paragraph 429, and it therefore appropriately occurs only in the general residuum provision, thereby completing this inclusive code of law upon cork materials and articles.

Nor is this view at variance with a consistent line of decisions by this court. The merchandise chiefly questioned is the residuum of cork squares and plates, dutiable under paragraph 429, left after corks and disks have been cut therefrom. While these squares and disks were dutiable articles as such, after the corks and disks were cut away, the residuum ceased to be such, for it ceased to be "cork bark cut into squares, cubes, or quarters." Nor was it dutiable under that paragraph as "manufactures * * * of cork bark," for the reason that it in no wise responds to the call and definition of a manufacture. It is merely the residuum of a consumed manu-

facture.  It has no name, it is not by the processes applied thereto
fitted for a purpose or been put upon the course of manufacture
toward any particular purpose, is fit only to be remanufactured into
some article other than that which it was originally designed to be
made into, and has no value, condition or processing, which makes it
useful or usable other than as the raw material from which it origi-
nated.  It is a cork wood or substance.

The competing statutes and the merchandise are essentially the
same in principle as with the fur clippings in United States v. Hat-
ters' Fur Exchange (1 Ct. Cust. Appls., 198; T. D. 31237), held by
this court to be dutiable as "furs, undressed"; and the reclaimed
rubber in United States v. Michelin Tire Co. (1 Ct. Cust. Appls., 518;
T. D. 31544), held dutiable by this court as "india rubber, crude,
fit only for remanufacture"; and the undressed raw jute rejected by
carding machines held by this court to be "jute, unmanufactured,"
in Salomon Bros. & Co. et al. (2 Ct. Cust. Appls., 431; T. D. 32196);
and the tobacco scrap consisting of cigar clippings and pieces broken
from the tobacco where cigars were manufactured held by the
Supreme Court of the United States in Seeberger v. Castro (153 U. S.,
32) to be dutiable as unmanufactured tobacco.

Other considerations aside, the record presents a case peculiarly
well within the rule of long continued customs practice.  The tariff
acts of May 22, 1824, and July 30, 1846, had provided *eo nomine*
duties upon "corks."  In the tariff act of June 30, 1864, this provi-
sion first made its appearance.  The *eo nomine* provision for "corks"
was dropped and the competitive provisions inserted: "On cork,
bark or wood, unmanufactured," 30 per cent ad valorem; "on
corks, and cork bark, manufactured," 50 per cent ad valorem.  By
the tariff act of July 14, 1870, the latter provision was repealed by
the enactment of a provision in the free list in the very words of the
free-list provision here in controversy, to wit, "cork wood, or cork
bark, unmanufactured."  The case of King *et al. v.* Smith, *supra*,
arose under and concerned this provision of the free list of the tariff
act of 1870.  Cork squares and cork quarters were assessed for duty.
The importers claimed free entry for them as cork, unmanufactured.
The report of the decision notes "the plaintiffs relied on the prac-
tical construction put on the tariff of 1864 by the Government," and
the court instructed the jury that the legal presumption was that
Congress intended to include the same goods by these phraseologies
and that if they found the practice under that act included these
goods within that free-list provision they should find for the plain-
tiff.  The jury so found.  The decision leaves a strong inference that
the customs practice from 1864 to 1871 was to admit even cork
squares and quarters free of duty as cork wood, or cork bark, un-

manufactured. In the tariff act of 1872 Congress reenacted the dutiable provision in the language "on corks and cork bark, manufactured," 30 per cent ad valorem, made no change in the judicially interpreted free provision, but continued the same in force. The tariff act of March 3, 1883, reenacted each of the provisions save as to rates in identical words. The free-list provision was reenacted in the same words in paragraph 548 of the tariff act of 1890, paragraph 457 of the tariff act of 1894, paragraph 536 of the tariff act of 1897, and paragraph 547 of the tariff act of 1909. By paragraph 434 of the tariff act of 1890 Congress, evidently in response to the decision in King *et al. v.* Smith, *supra,* put "cork bark, cut into squares or cubes" on the dutiable list and provided for "manufactured corks," reenacting at the same time, as stated, the free provision. Under this act certain "clippings or shavings left in the process of manufacturing articles from cork bark, but these shavings are not themselves manufactured into anything," were held by the Board of General Appraisers (G. A. 1545; T. D. 12994) not dutiable as waste, but free as "cork wood or cork bark, unmanufactured."

The Government took no appeal, and it appears from the record that that practice has continued and was the settled practice at the time of the enactment of the tariff act of 1909, under which this case arose. Paragraph 319 of the tariff act of 1894 provided only for "corks, wholly or partially manufactured." By the tariff act of 1897, Congress having in mind the broad scope of the decisions in the case of King *et al. v.* Smith and presumptively G. A. 1545 and the long continued customs practice, reenacted this free-list provision, and expressly excepted therefrom by paragraph 416 cork bark cut into squares or cubes, manufactured corks, and artificial cork and cork substitutes manufactured from "cork waste"—seemingly a plainly implied legislative approval of the classification of these cork clippings. No further controversy seems to have arisen, and in 1909 Congress further having expressly described or named by paragraph 429, *supra,* the dutiable cork articles, reenacted this identical free-list provision, so construed. So that it satisfactorily appears, prima facie at least, that, from 1864, substantially, and from 1870, exactly, this provision of the free list of the several enacted tariff laws to and until the enactment of the tariff act of 1909, under which this controversy arose, there was a consistent departmental, judicial, and legislative interpretation of this provision as including the identical merchandise here in suit—cork clippings and shavings.

When it appears that for all time until this case arose this merchandise was admitted free of duty under a consistent and continued customs practice approved by the courts and Congress, and which, when changed by a departmental ruling, was almost immediately

expressly approved and enacted as law by Congress (tariff act of 1913, paragraph 464, providing free entry for "cork wood, or cork bark, unmanufactured, and cork waste, shavings, and cork refuse of all kinds)," it would certainly be a severe hardship indeed to visit upon these importers the payment of the duties here involved.

*Affirmed.*