SCHAEFER ALKALOID WORKS *v.* UNITED STATES (No. 1624).[1]

TEA SWEEPINGS MIXED WITH LIME AND ASAFETIDA, HOW DUTIABLE.

Tea sweepings, when mixed with lime and asafetida to make them unfit for beverage use, imported for making caffeine, have not ceased to be tea sweepings. The mixture is not classifiable as a drug under either paragraph 27 or 477, tariff act of 1913; as waste not specially provided for, under paragraph 384; or as a nonenumerated article under paragraph 385. Whether or not the merchandise may be considered as segregable mixed goods is not decided; but, in the absence of any such claim or evidence by which segregation might be made, its classification as tea sweepings under paragraph 13 is affirmed.

United States Court of Customs Appeals, May 23, 1916.

APPEAL from Board of United States General Appraisers, G. A. 7726 (T. D. 35417). [Affirmed.]

*Walden & Webster* (*Henry J. Webster* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General (*Frank P. Wilson,* special attorney, of counsel), for the United States.

[Oral argument Feb. 16, 1916, by Mr. Webster and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Tea sweepings mixed with a percentage of lime and asafetida apparently for the purpose of preventing their consumption as tea were

---

[1] Reported in T. D. 36455 (30 Treas. Dec., 934).

classified by the collector of customs at the port of New York as tea sweepings. The goods were accordingly assessed for duty at 1 cent per pound under the provisions of paragraph 13 of the tariff act of 1913, which paragraph reads as follows:

13. Caffein, $1 per pound; compounds of caffein, 25 per centum ad valorem; impure tea, tea waste, tea siftings or sweepings, for manufacturing purposes in bond, pursuant to the provisions of the act of May sixteenth, nineteen hundred and eight, 1 cent per pound.

The importers protested that the goods were not tea sweepings, and claimed that they were free of duty as a crude drug under paragraph 477, or dutiable as a drug advanced in value or condition under paragraph 27, or as waste under paragraph 384, or as a nonenumerated article under paragraph 385. The importers further claimed in their protest that if the goods were classifiable as tea sweepings duty should be assessed on the weight thereof, minus the weight of the lime. The provisions of the tariff act on which the importers relied in their protest are as follows:

477. Drugs, such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, gums, gum resin, herbs, leaves, lichens, mosses, logs, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds; any of the foregoing which are natural and uncompounded drugs and not edible and not specially provided for in this section, and are in a crude state, not advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture: *Provided*, That no article containing alcohol shall be admitted free of duty under this paragraph.

27. Drugs, such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, gums, herbs, leaves, lichens, mosses, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, and weeds; any of the foregoing which are natural and uncompounded drugs and not edible, and not specially provided for in this section, but which are advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture, 10 per centum ad valorem: *Provided*, That no article containing alcohol shall be classified for duty under this paragraph.

384. Waste, not specially provided for in this section, 10 per centum ad valorem.

385. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for in this section, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this section, a duty of 15 per centum ad valorem.

The Board of General Appraisers overruled the protest and the importers appealed.

It appears from the record that the merchandise is tea sweepings which have been denatured by mixing them with lime and asafetida in accordance with regulations prescribed by the British Government. As to the proportions of lime and asafetida required to be added to

the sweepings by such regulations, Eugene Schaefer, a witness for the importers, testified as follows:

Q. What is the quantity of lime and asafetida that the British Government requires?—A. Ten per cent lime per mill per thousand and asafetida 1 per thousand.

Q. One part in a thousand of asafetida?—A. Yes, sir.

The evidence is undisputed that merchandise of the kind imported is used for the manufacture of caffein.

The contention of the importers that the goods are not dutiable as assessed is based entirely on the theory that the addition of a small percentage of lime and asafetida to tea sweepings destroys their distinctive character as such and brings into being a new product which is not tea sweepings. We do not think that the evidence in the record, considered in conjunction with the history of the legislation, warrants us in reaching that conclusion. The act of Congress of March 2, 1897, made it unlawful for any person or corporation to import into the United States any merchandise as tea which was inferior to prescribed standards of purity, quality, and fitness for consumption. By the terms of that act importations of tea were required to be examined and if found within the prohibition it was made obligatory upon the importer to export the same out of the limits of the United States within a period of six months after final reexamination, and if not so exported the collector was required to destroy the goods. On August 12, 1897, some six months after the passage of that act, the Treasury Department ruled that low-grade tea and tea dust imported for the purpose of manufacturing caffeine and not as tea should be admitted to entry provided the same was marked as a drug and mixed with slack lime and asafetida in the proportion of 100 parts of slack lime and 1 part of powdered asafetida to 1,000 parts of tea. The ruling was in effect a declaration that low-grade tea and tea dust could not be regarded as tea and, of course, were within the prohibition of the statute. The mixture prescribed by the statute was practically identical with that here involved and was clearly designed not to produce a new article with a new name and a new use but to make impossible the unlawful use of rejected teas and thus compel their assignment to the purpose for which they might be properly employed. The act of March 2, 1897, was amended on May 16, 1908, by adding at the end thereof a proviso, which is as follows:

*Provided*, That nothing herein shall affect or prevent the importation into the United States, under such regulations as the Secretary of the Treasury may prescribe, of any merchandise as tea which may be inferior in purity, quality, and fitness for consumption to the standards established by the Secretary of the Treasury, or of any tea waste, tea siftings, or tea sweepings, for the sole purpose of manufacturing theine, caffeine, or other chemical products whereby the identity and character of the original material is entirely destroyed or changed; and that importers and manufacturers who import or bring into the United States such tea, tea waste, tea siftings, or tea sweepings shall

give suitable bond, to be approved as to amount and securities by the Secretary of the Treasury, conditioned that said imported material shall be only used for the purposes herein provided, under such regulations as may be prescribed by the Secretary of the Treasury.

The proviso, expressly allowing as it did the importation of tea waste, tea siftings, tea sweepings, and teas unfit for consumption upon the giving of a bond conditioned that the importation should be used only for the manufacture of theine, caffeine, or other chemical products, made it unnecessary to mix lime and asafetida with tea sweepings in order to permit of their entry at the customhouse, but from that change of condition attaching to their importation it can not be reasonably deduced that Congress intended to exclude from the category of the tea sweepings such tea sweepings as were mixed with lime and asafetida for no other purpose than that which the bond was intended to secure. The added lime and asafetida did not modify the tea sweepings in so far as their legitimate use was concerned, and apparently accomplished in them no change except to render them unavailable for a use which was illegal and for which they were unfit. Tea sweepings so mixed can be regarded as denatured only in the sense that the foreign elements added were intended to prevent their diversion to an illegal use. They are not denatured in the sense that their nature has been so changed as to make them unsuitable for the uses for which they were originally fit. The addition of lime and asafetida did not advantage the tea sweepings by making them available for new uses, and neither did it unfit them for any of the uses for which unmixed tea sweepings were truly suitable. The importation under consideration is used for the manufacture of caffeine, just as are other tea sweepings, and is in truth and in fact a grade or class of tea sweepings created not to meet the demands of trade, commerce, or manufacture, but of legislation. While the importation is a class, kind, or grade of tea sweepings, it may be that it is, as claimed by the importers, a crude drug or even a drug advanced in value or condition by grinding in a mixing mill. Nevertheless, as tea sweepings are provided for *eo nomine* in paragraph 13, we must hold that the goods in controversy are more specifically provided for under that designation than as a crude drug in paragraph 477 or as a drug advanced in value or condition in paragraph 27. For the same reason the merchandise can not be classified as waste under paragraph 384 or as a nonenumerated article under paragraph 385.

Whether the importation should be considered as an entirety or as mixed goods which are segregable we do not think it is necessary to decide in this case, inasmuch as the importers failed to show that the goods were segregable and did not establish the quantities of the constituents of the mixture in terms which would permit of the assessment of duty in accordance with the tariff act. Tea sweepings

are subjected by paragraph 13 to a duty of 1 cent per pound. It appears from the testimony that the British Government requires that tea sweepings shall be denatured by mixing them with lime and asafetida. The testimony, however, does not make it clear whether that mixture is made on the basis of volume or weight or even that the goods were mixed in accordance with the regulations. In brief, there is nothing in the record which would warrant us in saying what number of pounds of lime and asafetida were actually used in denaturing the tea sweepings under consideration, and consequently, even if the goods were accepted as segregable, there is no basis furnished by the evidence upon which the deduction claimed could be calculated and the total duties ascertained. Neither has it been proven that it would be practicable for the collector to separate the lime and asafetida from the tea sweepings and thus determine in pounds the quantities of the denaturing agents actually in the goods at the time of importation. Under such circumstances, the entire importation must be subjected to a duty of 1 cent per pound. United States v. Strauss (3 Ct. Cust. Appls., 180, 182; T. D. 32464).

The decision of the Board of General Appraisers is *affirmed*.