UNITED STATES *v.* FURUYA ET AL. (NO. 2221). UNITED STATES *v.*
BUSH & CO. (NO. 2222).[1]

1. STIPULATION, EFFECT OF.

A stipulation by counsel that the merchandise at bar is the same as that in a
case formerly tried by the Board of United States General Appraisers does not
necessarily subject the merchandise at bar to the same classification received by
the merchandise in the other case.

2. EVIDENCE, WEIGHT.

In a controversy as to whether certain merchandise is sand or powdered pumice,
there is no evidentiary value in a reference in a letter from the collector to the
Board of United States General Appraisers to it as sand.

3. WITNESS, QUALIFICATION.

The fact that certain chemists who testified as to tests they had made in deter-
mining whether the merchandise at bar was sand or powdered pumice were not
mineralogists does not belittle their testimony.

4. EVIDENCE, PRESUMPTION IN FAVOR OF COLLECTOR.

The merchandise at bar having been classified by the collector as earthy or
mineral substances partly manufactured under paragraph 81, tariff act of 1913, and
being shown to be pumice stone (par. 75), and the protest making no claim for
pumice stone, the collector's decision, though erroneous, must stand.

United States Court of Customs Appeals, June 11, 1923.

APPEAL from Board of United States General Appraisers, Abstract 43664.

[Reversed.]

*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence,* special
attorney, of counsel), for the United States.
*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellees.

[Oral argument May 8, 1923, by Mr. Charles D. Lawrence.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Asso-
ciate Judges.

BLAND, Judge, delivered the opinion of the court:

These two cases involve the same class of merchandise, and all of
the protests involved in the two suits are admitted to cover the same
class of merchandise. The cases have been consolidated, and the
determination of the classification under one of the protests will
determine the classification under the others.

The Board of General Appraisers seems to have attached much
importance to the stipulation by the Government's counsel that the
merchandise in controversy in these suits was identical with the
merchandise in controversy in the case of George S. Bush & Co.
(Abstract 43278, 37 Treas. Dec. 324), in which case the board held
that the merchandise was sand and was entitled to free entry. The
board states that the conclusion there was based upon a long line of
decisions which had preceded it. An examination into those deci-
sions does not disclose a similar state of facts to those presented to

---

[1] T. D. 39699.

this court in this case. We do not regard them as ruling in the cases before us, nor do we attach such importance to the stipulation by the Government's counsel as to regard it as a bar to determining the classification of the merchandise upon its merits. The stipulation was to the effect that the commodity in question was the same in character as that which was subject to the board's decision in the Bush case. It was not admitted in the stipulation that the correct classification had been made of it in the former case. Probably in the former case the decision was correct, since it seems clear that the board was then dealing with an entirely different kind of record from the one at bar. Here a record is presented containing much testimony concerning the nature and characteristics of known samples of sand and pumice, and this court can not disregard its duty in reference to reviewing this evidence. It has been held by this court that where testimony is conflicting before the board it is the duty of this court to weigh it.—United States v. Riebe (1 Ct. Cust. Appls 19; T. D. 30776); United States v. Oberle and United States v. Ill-felder (1 Ct. Cust. Appls. 527; T. D. 31545).

In the case at bar, the Government has presented two witnesses who testify quite fully as to the texture, nature, and characteristics of crushed or pulverized sand and pumice stone. The testimony overwhelmingly shows that the so-called polishing sand was pumice stone crushed or reduced to powdered form, and that as such it was "pumice stone wholly or partly manufactured."

In weighing the testimony, this court is unable to find in the record of either of these cases any testimony of consequence which would compel the conviction that the merchandise was sand. It is true that reference has been made to the commodity as sand by the collector. We attach no evidentiary value to this reference by the collector where he refers to it as sand in his letter to the Board of General Appraisers. If the collector had classified the merchandise as sand (which he did not do) it would have been presumed to have been correct until proven otherwise.

If the preponderance of the evidence was a close question, this court would be loth to disturb the finding of the Board of General Appraisers, as they are presumed to have not only weighed the testimony but by personal contact to have been afforded the opportunity to personally acquaint themselves with the credibility of the witnesses. But in this case it would seem that the evidence is so overwhelmingly on the one side of the case that if it is to be weighed there is but one logical conclusion. The testimony of Ray W. Clough, chemist with the National Chemist Association, and formerly associated with the United States Bureau of Chemistry, and the testimony of Robert T. Elliott, chemist of the United States Food Products Laboratory, although replete with detailed descriptions of sand and pumice, and the processes followed in the various tests

made, and although the tests and the deductions made therefrom were not such as would require profound learning or study or research, the board seems to have adopted the contention of the importer that because these men were chemists and not mineralogists, their testimony should be given little weight. It does not require the services of a chemist to break up porous pumice stone with pestle and mortar and compare its hardness and general texture with sand similarly treated. Sand was harder than the porcelain mortar, pumice was not. Sand felt gritty in the hand, pumice had but little of this characteristic. Sand was heavy, pumice was lighter. Pumice had highly developed crystals, while sand, when crushed, had smaller crystals which were more compact. The specific gravity of the one was lower than the other. Sand did not adhere to the fingers in the same manner that pumice did. Is it to be said that these simple facts have no weight in a judicial tribunal unless they are presented from the lips of one versed in mineralogy or geology and all the technical and scientific lore associated with the different rock-forming ages of the past?

That the merchandise is pumice is not very seriously questioned by anyone in this whole proceeding, and the proof is sufficiently strong that it is pumice as in our judgment to convince the mind of any individual who will carefully peruse it.

This court declines to disturb precedents when thoroughly understood and properly applied, or to change consistently followed customs or practices, and as far as we are able to learn, it does not appear that any ruling or decision of any tribunal in connection with customs duties on pumice has been made on a statement of facts similar to the case at bar. We are fully cognizant of the well-settled rule that this court will not disturb the classification of merchandise made "under a consistent and continued customs practice approved by the courts and Congress."—United States *v.* Johns-Manville Co.; United States *v.* Armstrong Cork Co. (5 Ct. Cust. Appls. 404–410; T. D. 34939). There is no such condition shown to exist with reference to the merchandise in question here. The merchandise should have been classified as pumice stone wholly or partially manufactured.

Since, however, it appears that the merchandise covered by protests 932349, 932857, 932944, 935631, and 935542 was classified for duty by the collector as earthy or mineral substances partly manufactured, and assessed with duty as such at the rate of 20 per cent ad valorem under paragraph 81 of the tariff act of 1913, and since the protests against these assessments did not contain a claim that the merchandise was dutiable as pumice stone, the collector's assessment in these instances, while not approved, must remain nevertheless undisturbed. In respect to protest 934956, the assessment of the merchandise as pumice stone is approved. Accordingly the decision of the board sustaining the several protests is hereby *reversed.*