UNITED STATES *v.* SEARS, ROEBUCK & Co. (No. 1934).[1]

1. EVIDENCE, SUFFICIENCY OF—BURDEN OF PROOF.
   A protestant must show not only the incorrectness of the classification protested against but also the correctness of the one claimed. Where the merchandise is dutiable neither as classified nor claimed, the protestant has not sustained this burden of proof, and must fail.
2. JEW'S-HARPS NOT TOYS.
   Jew's-harps are not "toys" under paragraph 342, tariff act of 1913.
3. "MUSICAL INSTRUMENTS"—PARAGRAPH 373, TARIFF ACT OF 1913.
   It is not necessary that an article be capable of producing a complete tune to warrant its classification as a musical instrument under paragraph 373, tariff act of 1913.
4. JEW'S-HARPS ARE MUSICAL INSTRUMENTS.
   Jew's-harps are "musical instruments" under paragraph 373, tariff act of 1913.

---

[1] T. D. 37875 (36 Treas. Dec., 26).

5. EVIDENCE—PRESUMPTION IN FAVOR OF COLLECTOR'S CLASSIFICATION.

The collector classified· jew's-harps as toys under paragraph 342, tariff act of 1913. The Board of United States General Appraisers sustained the importers' protest claiming them classifiable as miscellaneous metal articles under paragraph 167. Since jew's-harps are musical instruments under paragraph 373, the protestant failed to show the correctness of the classification claimed, and the collector's classification, though not approved, must stand.

## United States Court of Customs Appeals, December 30, 1918.

APPEAL from Board of United States General Appraisers, Abstract 42391.

[Reversed.]

*Bert Hanson*, Assistant Attorney General (*Harry M. Farrell*, special attorney, of counsel), for the United States.
Submitted on record by appellee.

[Oral argument Oct. 29, 1918, by Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

Jew's-harps composed of metal, imported in 1917, were assessed by the collector as toys under paragraph 342 of the tariff act of 1913, the essential part of which provides for—

All other toys, and parts of toys, not composed of china, porcelain, parian, bisque, earthen or stone ware, and not specially provided for in this section.

The importers protested, claiming the merchandise to be dutiable at 20 per cent ad valorem under paragraph 167 of the same act, which provides for articles or wares not specially provided for, composed wholly or in chief value of certain metals, and it appears that these jew's-harps are thus composed.

The Board of General Appraisers sustained the claim of the importers, and the Government appeals.

The only witness who appeared before the board was called by the importers. He testified in substance that he was engaged in buying and selling wholesale quantities of merchandise for a wholesale toy and novelty industry, in the course of which business he had handled jew's-harps for 12 years; that, as he understood the meaning of the word toy, it was something for the amusement of children; that a toy was so considered in the wholesale and retail trade; that, in his business, he sold jew's-harps to department stores and to toy stores; that he had seen them used by grown-ups, and knew what they were used for; that he knew nothing about musical instruments; that he had never heard a tune played on a jew's-harp, but that noises were made with them.

During the examination he was asked: "Are these things used by grown-ups as well as children?" He answered: "Yes, more so by grown-ups, I judge."

The Board of General Appraisers was of the opinion that this evidence was sufficient to show that the jew's-harps were not fitted for

the amusement of children, and to overcome the presumed correctness of the collector's action; and further, that, under the holding of this court in Illfelder *v.* United States (1 Ct. Cust. Appls., 109; T. D. 31115), they were not toys.

In that case it was said by Smith, Judge, speaking for the court:

In common speech, and as popularly understood, a toy is essentially a plaything, something which is intended and designed for the amusement of children only, and which by its very nature and character is *reasonably* fitted for no other purpose. Although an article may be chiefly used for the amusement of children, if its nature and character are such that it is also reasonably fitted for the amusement of adults, or if it is reasonably capable of use for some practical purpose other than the amusement of children, it can not be classed as a toy unless it is affirmatively shown by the importer that it is so known and designated by the trade generally.

There is no claim of commercial designation in this case.

The Government, before this court, invokes the familiar rule that it is the duty of the importers not only to show that the collector's classification is wrong, but that the one for which they contend is correct. It also urges that the above-recited evidence is not sufficient to overcome the presumption of correctness attaching to the collector's action.

As to this latter claim, it is true that the testimony of the witness that he knew what jew's-harps were used for, and that he judged they were used more by children than by grown-ups, is not very convincing for the purpose of impeaching the correctness of the collector's action, yet, in view of the well-known common use of jew's-harps, and considering also the appearance of the article itself, we are not inclined to disagree with the conclusion of the board that it is established that they are not toys within the meaning of the statute above quoted as above construed.

The board took note of the possibility of jew's-harps being musical instruments by saying that that question was not necessary for decision, as it was not raised by the protest. In this connection it appears, and reference is made thereto in their opinion, that in Abstract 40143 (31 Treas. Dec., 216), certain jew's-harps had been classified as toys under the act of 1913, and were claimed dutiable as manufactures of metal under paragraph 167. In that case the protest was overruled, because it was not shown that the merchandise did not come within the definition of toys laid down in the Illfelder case, supra.

In the case now before us, the board, referring to the case last mentioned, said that the evidence lacking in that case had been supplied in this, and it therefore sustained the importers' protest.

We are unable to agree with the view of the board that the question as to whether or not these jew's-harps are musical instruments is not here a subject for consideration, because, while the importers have established that the collector's classification was erroneous,

they must further show that the one for which they contend is correct, as already suggested.    Therefore, if there is a duty paragraph not invoked by the importers which clearly governs the assessment of the merchandise, the importers have not discharged the burden cast upon them.

Now, paragraph 373 of the present act provides for "musical instruments or parts thereof  *  *  *," and if it appears that this instead of paragraph 167 is applicable to these jew's-harps, the importers' contention must fail.    United States v. Chattanooga Brewing Co. (3 Ct. Cust. Appls., 375; T. D. 32965); United States v. Danker & Marston (2 Ct. Cust. Appls., 462; T. D. 32208); Benjamin Iron & Steel Co. v. United States (2 Ct. Cust. Appls., 159; T. D. 31677); American Thermo-Ware Co. v. United States (6 Ct. Cust. Appls., 218; T. D. 35465); United States v. Strauss (3 Ct. Cust. Appls., 180 and 325; T. D. 32464 and T. D. 32621).

As the Government points out, the question as to the classification of jew's-harps has been the subject of a good deal of customs litigation.    Importers have claimed that they were classifiable either as musical instruments or as toys, according as the rates of duty imposed upon those two subjects of tariff legislation have been changed, and there does not seem to have been a uniformity of practice in that regard.

To enter into an exhaustive analysis of the various decisions and rulings upon this subject would extend this opinion beyond reasonable limits, but it is thought what follows is sufficient.

In G. A. 4122 (T. D. 19201), decided in 1898, the Board of General Appraisers had before it the question of whether jew's-harps, music boxes, harmonicas, metallophones, and similar articles of a musical character were dutiable as musical instruments under paragraph 453 of the tariff act of 1897, or as toys under paragraph 418 of the same act.    Apparently the matter was carefully and exhaustively considered.    It was pointed out that for many years jew's-harps had been found to be both musical instruments and toys, but nevertheless had been held dutiable as musical instruments because they were more specifically provided for as such, and also because the rates of duty imposed upon musical instruments were higher than those imposed upon toys.

Near the conclusion of its opinion the board said:

We are now asked by counsel to reach a different conclusion, although the only change in conditions of which the board is aware is a change in rates.    But this reversal in rates is not a sufficient reason for a reversal in rulings founded upon a series of judicial decisions and upon the settled customs practice of almost 20 years.

And while it found in that case that the goods were both musical instruments and toys, it sustained the assessment as musical instruments, thereby following what seemed to have been an established practice.

This case came before the Circuit Court for review, and there, in January, 1900, in Borgfeldt *v.* United States (124 Fed., 473), the judgment of the board was reversed.

The court (Wheeler, Judge) rather summarily disposed of the case, and without discussion, by saying that—

These articles are harmonicas, or mouth organs, and metallophones. They have been assessed as musical instruments * * * against the claim that they are toys * * *. They are not so fitted as to musical qualities that they would be used by musicians, but their musical effect is rather such as fits them for the amusement of children. They do not rise to the dignity of musical instruments.

It will be noticed that the learned judge did not in his opinion specifically mention jew's-harps, unless included in the word "mouth organ," nor apparently give weight to the reasoning of the board, or the authorities cited in its opinion, and whether the court's attention was specifically called to the fact that jew's-harps were among the articles involved in the case we are not advised further than as shown in his quoted opinion.

It appears that the Treasury Department acquiesced in the court's decision, so far as harmonics were concerned (see T. D. 21981), but we are unaware that it went any further in this regard.

In G. A. 4679 (T. D. 22096), decided in March, 1900, the board again had before it harmonicas and jew's-harps, which had been classified as musical instruments under the act of 1897. It took cognizance of Judge Wheeler's decision and of the above-mentioned acquiescence therein by the Treasury Department, and we infer, either because it assumed that the classification of jew's-harps was covered by the court's decision, or because it based its conclusion upon the small cost of the merchandise, or both, it held that jew's-harps should be classified as toys.

Since these decisions none are called to our attention other than those under the act of 1913, first above referred to, specifically involving the classification of jew's-harps.

It does appear, however, in several cases, that the question of cost came to be considered by the board as a somewhat decisive test in determining whether an alleged musical instrument was or was not a toy. This is referred to in G. A. 7579 (T. D. 34601), where, upon consideration, such a method was deemed unsatisfactory.

In passing, we note that the same conclusion has been reached by this court. United States *v.* Bernard, Judae & Co. (5 Ct. Cust. Appls., 202; T. D. 34328).

We are of opinion that there is no sound reason why jew's-harps may not be properly classified as musical instruments. In United States *v.* Sears, Roebuck & Co. (7 Ct. Cust. Appls., 60; T. D. 36388), we held triangles so classifiable under the act of 1913.

Definitions found in dictionaries and encyclopedias of the meaning of the term "musical instrument" were collated in that case. We

also note, without specifically quoting therefrom, that the great majority of such authorities in defining jew's-harps speak of them as musical instruments. There is nothing in the record here that tends to impeach that conclusion.

It is not necessary that an article must be found capable of producing a complete tune to warrant its classification as a musical instrument.

Our attention has been called to an interesting discussion of the subject jew's-harps by Dr. H. Carrington Bolton, published in the Popular Science Monthly in March, 1906, and since reprinted. The writer of that article concludes that jew's-harps have been commonly regarded as musical instruments for many centuries and throughout a considerable part of the world.

We have no doubt that a jew's-harp is, although somewhat primitive, a musical instrument, used for centuries and now for the purpose of producing musical sounds by many people, both children and adults, and although it may perhaps be relegated to an unimportant position in the musical world, nevertheless we think it is a musical instrument and commonly so regarded.

In this view the question remains as to the disposition of this case.

While, as already stated, the importers we think have established that the assessment of the collector was erroneous, they have not shown their own claim to be correct.

In such a status but one course is open to us, namely, to reverse the decision of the Board of General Appraisers, upholding the importers' contention, and to affirm, without approving, the collector's classification.

The judgment of the Board of General Appraisers is therefore *reversed.*