(C.D. 2755)

DECCA RADAR, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided September 6, 1966)

*Barnes, Richardson & Colburn* (*Hadley S. King* and *Earl R. Lidstrom* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Mollie Strum,* trial attorney), for the defendant.

Before OLIVER, NICHOLS, and WATSON, Judges

WATSON, Judge: These protests which were consolidated for trial, relate to certain merchandise described on the invoices as "Magnifiers," type 4436 A, which was classified under paragraph 228(b) of the Tariff Act of 1930, as modified by the Japanese Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 53877, at the rate of 45 per centum ad valorem as microscopes, finished or unfinished, not specially provided for, valued over $50 each. It was agreed between the parties that the articles are valued each over $50 (R. 4).

Plaintiff herein claims the merchandise in question properly classifiable under paragraph 230(d) of said act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, at the rate of 21 per centum ad valorem as manufactures in chief value of glass, not specially provided for.

Plaintiff introduced and there was received in evidence a photographic illustration of the imported merchandise which appears at page 7 of a brochure entitled "Decca River Radar." (Plaintiff's exhibit 1.) The article in question, marked "4436 A," is shown as used in conjunction with a so-called "Display Unit" which is described in the record as "a unit which presents the master of a vessel with the radar picture" (R. 9). It was stipulated that the component material of chief value of the magnifier 4436 A is glass (R. 6). A complete radar unit consists of six main components: An aerial unit which sends and receives the signal; an aerial turning unit which revolves the aerial; a transceiver; a display unit; a motor alternator; and a magnifier (R. 8–9).

An illustration of the relative size of the "picture" on the radar screen, with and without the use of the imported magnifier, is given at pages 11 and 13 of the above referred to brochure. (Plaintiff's exhibit 2.)

Plaintiff's sole witness was Mr. Thomas Guadagno, "commercial supervisor" at Decca, who stated that he was familiar with the merchandise under consideration, the magnifier unit, type 4436 A. He testified that the imported magnifier is specially designed for use with a Decca Radar set, having a display unit of a particular size. There are three studs protruding from the top of the display unit, and there are three holes with a spring in each at the bottom part of the magnifier, type 4436 A, which are spaced in such a manner that the magnifier fits over the studs, permitting the magnifier to be locked into the display unit (R. 9–10). Mr. Guadagno testified that there is no other radar unit known to him than the Decca Radar display unit on which the imported magnifier will fit (R. 10).

Plaintiff's witness further testified that the imported magnifier unit magnifies the picture on the display unit from 9 to 15 inches, or a ratio of 1 to 1.7. The witness explained that the magnification "is taken from the display unit on the picture tube that is in the display unit" (R. 10). Mr. Guadagno stated that the picture as it appears under magnifier unit contributes to the use of the radar set, that is, "the more complicated the picture on the display unit, the more necessity for the magnifier" (R. 11). He further stated that the 4436 A magnifier unit is sold as standard equipment with the Decca Radar 215 or 216 models.

On cross-examination, plaintiff's witness testified that the 4436 A magnifying unit is always sold with the particular radar units above mentioned, but that it may be purchased separately for use with other Decca Radar sets. He further testified that, if the owner of a 215 or 216 model radar set wished to buy a new or another 4436 A magnifying unit, he could do so—and that his firm would sell it separately, "as a magnifying unit" (R. 12). The witness then stated that the

magnifying unit is designed "in order to obtain a magnified image of the objects which would be seen more distinctly with the use of Plaintiff's Exhibit 1 than through the naked eye" (R. 12). On page 11 of the brochure "Decca River Radar," above referred to (plaintiff's exhibit 2), the middle picture illustrates what can be normally seen on the display unit and another copy of the middle picture at "page 13" of the brochure illustrates the enlarged "picture" which is presented in greater detail by reason of the use of a magnifying unit such as here in question (R. 13–14).

The issue in the case at bar is whether the imported magnifying units were properly classified under paragraph 228(b) of the Tariff Act of 1930, as modified, as "microscopes." We are here concerned with the common meaning of the term "microscope," a commercial meaning different from the common meaning not having been advanced or established in the record herein.

The question as to what constitutes a "microscope" for tariff purposes was passed upon by this and our appellate court in the case of *Laco Trading Co.* v. *United States*, 45 Cust. Ct. 336, Abstract 64769, affirmed in *Laco Trading Co.* v. *United States*, 51 CCPA 30, C.A.D. 833. The merchandise there involved consisted of certain "viewers" designed and exclusively used for viewing color photographs fitted in a cardboard frame, the overall dimensions of which were 2 by 2 inches. The so-called color transparencies were 1½ inches long by 1 inch wide, which were securely fitted into the cardboard frame, 2 inches square. Essential to the functioning of the viewer in question was an optical component and an electrical system, which were enclosed in a conveniently shaped housing. The optical component consisted of two lenses of 2-power magnification, whose sole purpose was to enlarge or magnify the color photograph on the slide being viewed. The electrical system included two contacts, an upper and a lower, which went to a small electric bulb which spread the light evenly throughout the viewing surface. The viewer functioned by inserting the slide in a slot at the top thereof, the slide being then pressed down to make electrical contact for viewing purposes. This court in the *Laco Trading Co.* case, *supra*, held that the viewer in question was not a "microscope" within the common meaning of the term. In so holding, the court, page 337, cited certain dictionary definitions of "microscope" as follows:

Knight's American Mechanical Dictionary defines "microscope" as "An optical instrument by which objects too small to be viewed by the naked eye may be seen and examined."

In Funk & Wagnalls New Standard Dictionary, "microscope" is defined as "An instrument for assisting the eye in the vision of minute objects or features of objects that would be invisible without such aid."

Discussion of the term "microscope" in the Encyclopaedia Britannica includes the following:

> MICROSCOPE, an optical instrument for examining small objects or the fine detail or structure of objects (Gr. * * * small * * * to view); it acts in such a way that in the eye a clearly focussed image is formed which is larger than the unaided eye could produce. * * *

Webster's New International Dictionary defines "microscope" as "An optical instrument, consisting of a lens, or combination of lenses, for making enlarged or magnified images of minute objects."

The court in the *Laco Trading Co.* case, *supra*, thereupon stated:

> All of the foregoing definitions emphasize the basic design of a microscope as an instrument which serves to aid the naked eye in *the examination of minute objects*, a function that connotes general usage in different kinds of work that may include industrial as well as scientific branches of research. The merchandise in question is not such an instrument. On the contrary, the viewer under consideration is a device that is made for the extremely limited purpose of viewing color photographs in slides, 2 inches square, that fit the slot in the viewer. * * * [Emphasis quoted.]

The court in the *Laco Trading Co.* case, *supra*, then referred to a definition of "microscope" as given in Van Nostrand's Scientific Encyclopedia (page 337, Abstract 64769), and at page 338, then commented:

> The viewer in question, that uses only lenses of "approximately two power magnification" (R.12) and which needs no focusing in its exclusive use of showing color photographs to be viewed, is not, in the light of the definitions and descriptions, hereinabove set forth, to be placed in the same category as the instrument commonly known as a microscope.

In the above connection, it may be noted that the involved magnifying unit, as in the case of the viewer involved in the *Laco Trading Co.* case, *supra*, "needs no focusing" in its exclusive use of showing an enlarged picture as presented by the radar display unit. In our opinion, the holding of the court in the *Laco Trading Co.* case, *supra*, is controlling in the determination of the proper classification of the magnifying unit here involved. The situation in that case parallels, in our opinion, that which is here presented. There the court, page 338, stated:

> * * * In this case, the viewer under consideration, by the combined application of the principles of optics and magnification, shows, exclusively for viewing purposes, enlarged color photographs. Looking at color transparencies with the use of the article under discussion, is not an examination of minute objects, within the definitions of the word "microscope," previously referred to herein. In a word, this viewer is not a microscope.

As was stated by our appellate court in the *Laco Trading* case, *supra:*

Not everything that contains magnifying means is necessarily a microscope in a tariff sense. * * * Surely the mere presence of a magnifying lens does not of itself make the instant viewer a microscope as that term is commonly understood.

As heretofore noted, the definition of "microscope" is given in Funk & Wagnalls New Standard Dictionary, *supra*, as "An instrument for assisting the eye in the vision of minute objects or features of objects that would be invisible *without such aid*." [Italic ours.] In the case at bar, the viewing of the "objects" presented by the radar display unit, so far as the record discloses, is possible without the aid of the magnifying unit. While it may be true that the larger picture measuring some 15 inches presented with the use of the magnifying unit permits the observer to view details not as easily seen on the smaller picture, measuring 9 inches, the magnification made by the unit in question, does not, in and of itself make the involved unit a "microscope." The mere possession of magnifying properties in a certain commodity will not establish classification of merchandise as a microscope, to the exclusion of other considerations. *Laco Trading Co.* case, *supra*. The magnifying unit merely enlarges a picture already present, measuring some 9 inches. This is hardly, in our opinion, an "examination of minute objects," one of the characteristic factors in the case of a "microscope" as commonly understood. It would appear that the magnifier in question is viewed from a normal distance and is not held up to the eye, as in the case of articles held to be microscopes. Further, the imported magnifier is exclusively used on radar sets, and not in "industrial" or "scientific" branches of research, the latter instances being those commonly understood in connection with articles commonly known as "microscopes."

In support of the classification here made, the defendant directs our attention to the holding of the court in *Sussfeld, Lorsch & Co.* v. *United States*, 30 Treas. Dec. 265, T.D. 36174. In that case, the Board of General Appraisers held certain pocket magnifying glasses properly classifiable under the *eo nomine* provision in paragraph 94 of the Tariff Act of 1913 as "microscopes" rather than under paragraph 93 of the said act as optical instruments. The court there found in effect that the items under consideration conformed to the common meaning of the word "microscope." In our opinion, however, the *Sussfeld, Lorsch & Co.* case is distinguishable from the case at bar. There, the testimony of plaintiff's witness was to the effect that the articles in question were used for examination of minerals or botanical objects or for magnifying printed matter. The same situation does not prevail in the case at bar. The involved magnifying units are not used for the examination or magnification of any minute objects. As heretofore observed, these magnifiers merely enlarge for

viewing a picture already present in a measurement of 9 inches on the radar display unit.

On the basis of the record before us and for the same reasons advanced by this court in the *Laco Trading Co.* case, *supra*, we are of opinion and hold that the magnifying units under consideration are not "microscopes" and, accordingly, are not dutiable as such.

We now come to a consideration as to whether the plaintiff in this case has established that the involved articles are properly classifiable at the rate of 21 per centum ad valorem under paragraph 230(d) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as manufactures in chief value of glass, not specially provided for. In this connection, our appellate court has held that a protestant must show not only the incorrectness of the classification protested against but must also establish the correctness of the one claimed. If there is a duty paragraph not invoked by the importer which clearly governs the assessment of the merchandise, the importer has not discharged the burden cast upon him. (See *United States* v. *Sears, Roebuck & Co.*, 9 Ct. Cust. Appls. 33, T.D. 37875.) In the case at bar, paragraph 230(d) of the tariff act for "manufactures in chief value of glass," under which plaintiff claims, is one of general description. Clearly, the involved "magnifiers" are "optical instruments." An instrument is or is not an "optical instrument" according to whether or not it is designed directly or indirectly as an aid to vision, or to produce for optical inspection, the picture of some object. *United States* v. *International Forwarding Co.*, 9 Ct. Cust. Appls. 156, T.D. 37995. The indicated use of the articles at bar conform to the requirements for "optical instruments" as above indicated. Accordingly, we are of opinion and hold that the articles in question are more specifically provided for under the same paragraph 228(b) of the Tariff Act of 1930, but as "optical instruments." The protests herein have not claimed the correct classification for the merchandise, the erroneous classification by the collector must stand. *O'Connor-Harrison & Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 214, T.D. 42239. The protests in this case are overruled without affirming the action of the collector.

Judgment will issue accordingly.